## Leverett B. Sidway and Henry T. Sidway v. American Mortgage Company of Scotland, Limited.

Gen. No. 11,595.

1. AGENT—*when forfeits right to compensation.* An agent for-feits his right to compensation for gross misconduct and for inten-tional frauds committed against his principal.

2. COMPOUND INTEREST—*when allowance of, improper.* The al-lowance of compound interest upon money collected by an agent and not reported to his principal, is improper.

Bill for accounting. Error to the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1904. Affirmed. Opinion filed April 5, 1905.

**Statement by the Court.** Defendant in error filed its bill in the Circuit Court of Cook county against plaintiffs in error for an accounting. For several years prior to the beginning of the suit plaintiffs in error had acted as the agents of defendant in error, in loaning money, collecting interest and in managing and renting property. The bill claims that plaintiffs in error collected large sums of money for defendant in error, and did not report them or pay them over to defendant in error. Plaintiffs in error claim they are entitled to extraordinary compensation for certain extra services alleged to have been rendered between the years 1884 and 1896, and to certain commissions not earned at the time business between them was terminated.

The cause, being at issue, was referred to a master to

take proofs and report his conclusions of law and fact. Upon: the coming in of the master's report, exceptions· were filed by both parties. The exceptions of defendant in error were overruled. Some of the exceptions of plaintiffs in error· were sustained and the others were overruled.

The master reported the total amount due from plaintiffs· in error to defendant in error on May 9, 1902, was $32,-484.46. After finding from the evidence that there was on July 9, 1896, a balance due to defendant in error of $23,748.17, the master added interest at the rate of five per centum per annum on certain collections made by plaintiffs in error, without the knowledge of defendant in error,. and retained by plaintiffs in error, from the respective dates of the collections to the date of commencement of the suit, amounting to $1,401.10. This sum was added by the, master to the balance of $23,748.17, making a total of $25,149.27. To this total he added interest at five per centum per annum to May 9, 1902, making the total amount which he found due and for which he recommended a decree be entered. The court in its decree approved the master's report as to the amount due on the filing of the bill July 9, 1896, and finds that in addition thereto there was due defendant in error interest on certain items constituting· a part of said sum from the dates respectively of the collections of such items, amounting to $8,525.84, making a total amount due defendant in error $32,274.01, for which amount, together with $721.47 taxed as costs, the court en-- tered a decree against plaintiffs in error.

The court further found that W. F. Pace recovered a judgment on April 24, 1895, against L. B. Sidway, one of plaintiffs in error, in the Circuit Court of Boone county, Arkansas, for $1,353.82, which, with interest at six per cent per annum and costs, was still due and unpaid; that this judgment was for services rendered to defendant in error, and ordered that plaintiffs in error should have credit on the amount found due from them, for $2,023.96, the amount of said judgment and interest; but that in the event the defendant in error showed to the court at any time that:

it has paid said judgment of W. F. Pace, it was to have execution therefor against plaintiffs in error.

From this decree plaintiffs in error prosecute this writ.

LEE D. MATHIAS, for plaintiffs in error; LORENZO C. BROOKS, of counsel.

BENTLEY & BURLING, for defendant in error.

MR. JUSTICE SMITH delivered the opinion of the court.

It is urged by plaintiffs in error that the decree is erroneous, in that it does not allow them credit for services to the amount of $44,500, and for commissions $2,111.56. They also complain of the allowance of interest to defendant in error on the sums held in the alleged suspense account.

The question of fact as to whether the Sidway claim for extra services amounting to $44,500, or any other sum, should be allowed or not, turns upon the contract between the parties. The mortgage company contends that the business between the parties was all conducted upon the basis set forth in the letter of Sidway to the company dated December 21, 1881. In this letter Sidway had said: * * * "We will undertake to make such loans upon five years time and to care for and manage them up to and including their maturity and collection to the best of our ability, for a compensation of 5%. * * * We shall at all times take pleasure in advising your board of matters in America which may be of importance to the company's business." Sidways, on the other hand, contend that this letter was never acted upon, and that no business was ever done under it. Their contention is that in 1884, while Mr. Tait was on a visit to America, a verbal agreement was made whereby the company was to furnish Sidway $400,000 in each year upon which he could earn commissions amounting to $20,000 per annum, in consideration of which Sidway's firm was to do the business of the company in the United States and look after their former business done by other agents, charging the company little, if anything, more than cost

Sidway v. American Mortgage Co.

for it, including the management of the Corbin farms and other farms that were expected to be foreclosed.

The master found adversely to the Sidways upon their claims as to this contract. The Circuit Court has approved that finding; and from our examination of the evidence we find no reason for dissenting from the conclusions of the Circuit Court. The improbability that the evidence of so important a contract should be left, to rest in parol testimony; the inherent improbability that the company agreed to furnish $400,000 annually for loans which were to run for five years, in view of the amount of its capital stock; the fact that the company had been making a continual breach of the supposed agreement for five years, and yet II. T. Sidway, on his visit to Edinburgh in 1889, made no direct reference to the arrangement of 1884, or its breach; the fact that a careful search failed to reveal anything in the files, records or correspondence of the company showing any reference to such a contract; Sidway's testimony to the effect that the terms of the contract or its continual breach, or the failure of the company to pay for the extra services never became the subjects of correspondence between the parties; that Bogue, Sidway's partner, never heard of the contract,—all these and other facts and circumstances appearing in the record convince us that no such contract was made, and that the finding of the master to that effect is correct, under the evidence..

There is also abundant evidence in the record to justify the master's finding that the Sidways are not entitled to any compensation for extra services. The services relating to the Corbin farms and to the Oregon inspection of securities and properties were without doubt of a special character, but they were settled and paid for, as shown by the correspondence and other evidence, long before this suit was commenced. The other special or extra services came within the letter of December, 1881, which we think expressed the contract between the parties, and plaintiffs in error are not entitled to extra compensation therefor. The evidence shows that Sidway, at the time the services were

rendered, did not consider that he was entitled to compensation therefor.

The evidence relating to the question of the special services is too voluminous to be referred to in detail to any extent, without extending this opinion beyond any reasonable length, and we must therefore necessarily confine ourselves to a short statement of our conclusions upon this branch of the case. These conclusions are, that the services rendered, other than those which were paid for, were only such as the Sidways were bound to render under the terms of the letter of December, 1881; that in the letters of the Sidways up to about 1894, they recognized their obligation to render the services which they did render under the contract and without extra compensation therefor; and that this inference is further justified from the fact that no claim for extra compensation was made by Sidway during his visits to Edinburgh in 1891, 1892 and 1894.

The claim made by plaintiffs in error for commissions appeared in the monthly statement of August 10, 1896, as follows: "To com. on int. unpaid per stat. herewith, $2,111.56." Sidways in our opinion had no right to make this charge or claim because their services as agents under the agreement included the care and collection of loans, and these commissions were not due and payable until the interest coupons were collected, and were to be taken out of the moneys collected.

Prior to making this charge Sidway had written to the company, "We will expect you to, without unnecessary delay, take such reasonable time for taking your business off our hands as circumstances and your distance from Chicago requires." Thus Sidway had given up the business of the company several months before this charge or claim for commissions on uncollected interest was made. In the letter of December, 1881, it was provided that the commission of 2½%, which Sidways were to receive from the company, should be paid "by deducting one-fifth part of it from each annual coupon when collected from borrower." Clearly,

under the provisions of the contract, plaintiffs in error were not entitled to these commissions.

There is another obvious reason, clearly appearing in the evidence, for not allowing to plaintiffs in error these commissions. There is no reasonable doubt that Sidway, Bogue & Company, and L. B. Sidway & Company are defaulting agents of defendant in error, in that they collected money belonging to the company and retained it, not only without reporting the transactions to the company, but they falsely reported certain securities in hand, when in fact they had been fully paid. This was gross misconduct.

In Prescott v. White, 18 Ill. App. 324, it is held: "For gross misconduct in the course of his agency, or intentional frauds upon his principal, he (the agent) may be held to have forfeited all right to compensation as respects any of the business of the principal into which such fraud or misconduct shall have entered: Story on Agency, pp. 332-333; Vennum v. Gregory, 21 Iowa 326; Sea v. Carpenter, 16 Ohio 412; Jones v. Hoyt, 25 Conn. 386."

For these reasons the decree of the Circuit Court properly denied plaintiffs in error credit for the commissions claimed.

Defendant in error has assigned cross errors under which it claims that the court should not have modified the master's report by striking out the compound interest which the master allowed upon the amounts of the collections which were held by plaintiffs in error and not reported. We think the court ruled properly in refusing to allow the company compound interest on these amounts.

The decree of the Circuit Court is affirmed.

*Affirmed.*